AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*January 16, 2026*

Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. **4:26-mj-041** |
| PATRICK SANTANA SCOTT | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 7, 2026 in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count One: 18 U.S.C. §§ 922(o) and 924(a)(2). | Count One: Possession of a machinegun, in violation of 18 U.S.C. §§ 922(o) and 922(a)(2). |
| Count Two: 18 U.S.C. § 922(n) and 924(a)(1)(D). | Count Two: Receipt of a firearm and ammunition while under indictment for a felony, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D). |
| | See Attachment A, incorporated herein by reference. |

This criminal complaint is based on these facts:

See attached affidavit of probable cause.

☑ Continued on the attached sheet.

*/s/ Joseph T. Oppedisano*
*Complainant's signature*

FBI SA Joseph Oppedisano
*Printed name and title*

Sworn to and signed by telephone.

Date: January 16, 2026

*/s/ Christine A Bryan*
*Judge's signature*

City and state: Houston, Texas

Hon. Christina A. Bryan, U.S. Magistrate Judge
*Printed name and title*

4:26-mj-0041

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joseph T. Oppedisano, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 2019. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2516. I am currently assigned to the FBI Houston Division Field Office as part of the Violent Crimes Task Force. I have participated in investigations of RICO, murder for hire, assaults on federal officers, Hobbs Act violations, felon in possession, violent crimes, drug trafficking, and violations of federal firearms laws, among other things. I have also conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of recorded conversations. Through my training, education, and experience, including conversations with other law enforcement officers, I have become familiar with the patterns of activity regarding felons who possess firearms, the methods they employ to obtain firearms, and their use of firearms while committing other criminal activities. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2.  This Affidavit is made in support of a criminal complaint charging **PATRICK SANTANA SCOTT** with possession of a machinegun, in violation of 18 U.S.C. § 922(o); and receipt of a firearm and ammunition while under indictment, in violation of 18 U.S.C. § 922(n). I am familiar with the information contained in this Affidavit based upon the investigation I have

personally conducted and my conversations with other law enforcement officers involved in this investigation.

3. Because this Affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that violations of 18 U.S.C. §§ 922(o) and 922(n) have been committed by **SCOTT**.

## **PROBABLE CAUSE**

4. The FBI Houston Violent Crimes Task Force ("VCTF") is investigating the crimes of possession of a machinegun, in violation of 18 U.S.C. § 922(o); and receipt of a firearm and ammunition while under indictment, in violation of 18 U.S.C. § 922(n), committed by **SCOTT** on or about January 7, 2026, in Houston, Texas, within the Southern District of Texas.

5. On January 7, 2026, at approximately 2:26:44 p.m., Houston Metro bus #2611 was in service and travelling on Walnut Bend Lane in Houston, Texas, carrying passengers. A passenger subsequently identified as **SCOTT** was seated near the back of the Metro bus in the second to last row, second to the window on the right side of the bus. Metro bus surveillance shows **SCOTT** wearing black pants, a black t-shirt, and a black backpack.



2

Surveillance shows **SCOTT** on his cellular device while the bus is in motion. **SCOTT** is sitting to the left of an unknown male (hereinafter "**UNSUB 1**"), who sat against the right-side window. Sitting directly in front of **SCOTT** was a female who was later identified as (hereinafter "**VICTIM 1**").

6. At approximately 2:26:47 p.m., the Metro bus came to a complete stop to pick up more passengers at the intersection of Richmond Road and Walnut Bend Lane. At approximately 2:26:49 p.m., surveillance video showed **SCOTT** taking his backpack off and place it in his lap as he looked out of the window. At approximately 2:26:57 p.m., a subject later identified as **B.S.** entered the bus from the front and proceeded down the aisle towards the back in the direction of **SCOTT**. At approximately 2:27:01 p.m., **B.S.** appeared to notice **SCOTT** and pulled a firearm with his right hand from his hooded sweatshirt. **B.S.** then pointed it in the direction of **SCOTT** and fired one round. At the same moment, **SCOTT** pulled a firearm out of his backpack and pointed it in the direction of **B.S. VICTIM 1**, who was seated between **SCOTT** and **B.S.**, was shot in the side of her head and slumped over in her seat. At approximately 2:27:02 p.m., **B.S.** fled the Metro bus from the rear exit near the shooting. **SCOTT** could be seen pointing his firearm at **B.S.**, then pulling it down to his lap and manipulating the slide. I am aware that manipulating the slide in this fashion is consistent with **SCOTT** possessing an actual firearm rather than a replica or BB gun. At approximately 2:27:06 p.m., **SCOTT** and **UNSUB 1** gathered their belongings and departed the Metro bus along with other passengers. **VICTIM 1** was taken to Memorial Hermann Emergency Center and was pronounced dead from a single gunshot wound to the head.

7. Shortly thereafter, a juvenile male (hereinafter "**VICTIM 2**") called his mother and explained that he had been shot in the buttocks while on a Metro bus. **VICTIM 2's** mother drove him to HCA West on Westheimer Road in Houston, Texas, and called 911 to report the gunshot

3

wound. Detectives with the Houston Police Department ("HPD") interviewed **VICTIM 2** at the hospital and also recovered a bullet fragment from **VICTIM 2's** buttocks.

8. A review of surveillance video showed that **VICTIM 1** was seated in front of and perpendicular to **SCOTT**. **VICTIM 1** sat facing passengers on the other side of the bus with the right side of her body towards **B.S.** as he entered the bus and began moving down the aisle. **VICTIM 2** sat before the back entrance/exit door on the left side of the Metro bus, which was behind **B.S.** when **B.S.** pulled out his firearm and shot in the direction of **SCOTT**. **B.S.'s** back was to **VICTIM 2** during the shooting. Based on the positioning of **VICTIM 1** and **VICTIM 2**, I believe that both **B.S.** and **SCOTT** fired on one another, with **B.S.'s** round striking **VICTIM 1** and **SCOTT's** round striking **VICTIM 2**.

9. The HPD Crime Scene Unit arrived on scene and collected two spent shell casings from the scene of the shooting, which were collected as evidence. **SCOTT** was subsequently arrested and, during an interview, stated that the firearm he possessed during the shooting was a BB gun and that he discarded it.

10. A witness contacted HPD Homicide because he observed and recognized **B.S.** from news reporting on the shooting. HPD Homicide detectives responded to **B.S.'s** residence in Houston, Texas. A family member granted consent for detectives to search the apartment for any evidence of the crime. Detectives were told that **B.S.'s** belongings were in a closet. Detectives located a large brown comforter with a hole in it within the closet. When they picked up the comforter, they noticed it be weighed down in the center. They cut open the comforter and located a black pistol with a tan grip and extended magazine. It was identified as a loaded Glock brand, 23 model, nine-millimeter handgun. Detectives also located a black Adidas backpack consistent in appearance with one **B.S.** possessed during the shooting on the Metro bus.

11. On January 8, 2026, HPD officers were performing surveillance at **SMITH's** known address on Huntington Estates Drive in Houston, Texas, when they observed a gray Honda Accord pull into the driveway. A subject exited the residence carrying a gray and black suitcase and placed it in the Honda's trunk. The Honda then backed out of the driveway and drove away.

12. HPD officers followed the Honda and conducted a traffic stop after observing traffic violations. During the traffic stop, the driver and sole occupant of the vehicle consented to a search of the Honda. A search of the gray suitcase in the trunk yielded a gray and black Glock brand, 19 model, nine-millimeter handgun bearing serial number BGSB663, with a visible machinegun conversion device commonly known as a "switch." Based on my training and experience, I am aware that a machinegun conversion device is designed and intended to convert a semi-automatic firearm into a fully automatic firearm—that is, a firearm that shoots automatically more than one shot, without manual reloading, by a single function of the trigger. Inside the same suitcase, officers also recovered two AR pistols. A blue backpack next to the suitcase contained additional firearms, a bag of suspected cocaine base, a bag of suspected marijuana, and a bag of suspected methamphetamine pills.

13. On January 14, 2026, investigators brought the Glock 23 from **B.S.'s** residence and the two spent shell casings from the scene of the shooting to the Bureau of Alcohol, Tobacco, Firearms, and Explosives for a National Integrated Ballistic Information Network ("NIBIN") analysis. The conclusion of the analysis was that one of the two shell casings was fired by the Glock 23 handgun recovered from **B.S.'s** closet. The other shell casing, however, was *not* fired from that weapon. Subsequent analysis of the second shell casing concluded that it was fired from the Glock 19 recovered from the suitcase taken from **SMITH's** residence on January 8, 2026. That shell casing was identified as a nine-millimeter Luger manufactured by Hornady.

14. On January 16, 2026, I conducted independent research into Hornady and concluded that Hornady ammunition is manufactured in Grand Island, Nebraska, and therefore necessary traveled in interstate or foreign commerce before arriving in Texas. Based on my training and experience, I am also aware that Glock firearms are not manufactured in Texas and also necessarily travel in interstate or foreign commerce before arriving here.

15. On August 15, 2025, **SCOTT** was charged with aggravated robbery by criminal complaint in Harris County, Texas, case file number 192870901010-3. Aggravated robbery is a first-degree felony punishable by more than one year of imprisonment. Court records show that **SCOTT** appeared in court on the charges on November 4, 2025, and bail was set. The court also set various conditions of bond, including that **SCOTT** may not possess any weapons, firearms, or ammunition. **SCOTT** subsequently posted bail and was released from custody. This case remains pending against **SCOTT**. Accordingly, **SCOTT** was prohibited from possessing firearms and ammunition on January 7, 2026.

## **CONCLUSION**

16. Based upon the information delineated above, I believe that probable cause exists for the issuance of a Criminal Complaint charging **SCOTT** with possession of a machinegun, in violation of 18 U.S.C. § 922(o); and receipt of a firearm and ammunition while under indictment, in violation of 18 U.S.C. § 922(n).

Respectfully submitted,

*Joseph T. Oppedisano*
Joseph T. Oppedisano
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically to me this 16th day of January 2026 and I find probable cause exists.

*Christine A Bryan*
HONORABLE CHRISTINA A. BRYAN
United States Magistrate Judge
Southern District of Texas

7

# ATTACHMENT A

## COUNT ONE
*Possession of a Machinegun*

On or about January 7, 2026, in the Southern District of Texas, the defendant, **PATRICK SANTANA SCOTT**, did knowingly possess a machinegun, to wit: a Glock brand, 19 model, nine-millimeter handgun bearing serial number BGSB663, which was equipped with a machinegun conversion device, knowing that the weapon had the characteristics that made it a machinegun, as defined in Title 26, United States Code, Section 5845(b), in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

## COUNT TWO
*Receipt of a Firearm and Ammunition*
*While Under Indictment for a Felony Offense*

On or about January 7, 2026, in the Southern District of Texas, the defendant, **PATRICK SANTANA SCOTT**, who was then knowingly under indictment for a crime punishable by imprisonment for a term exceeding one year, did knowingly receive a firearm, to wit: a Glock brand, 19 model, nine-millimeter handgun bearing serial number BGSB663, and ammunition, to wit: approximately one round of nine-millimeter Luger ammunition manufactured by Hornady, which had been transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(n) and 924(a)(1)(D).